argument calendar, Iraq Telecom versus IBL Bank. All right, Mr. Berger, you have ten minutes, but you've reserved three minutes for rebuttal. You may proceed. Thank you, Your Honor, and may it please the Court, the District Court undermined international comedy interests. There's going to be a decision on April 27th, apparently, in Iraq? So, we, it's from, in Lebanon, Your Honor, yes. In Lebanon, and that decision will have a significant impact on this appeal? We believe so, Your Honor, and that's why we had asked the District Court to stay the proceedings here in the United States pending the outcome of proceedings in Lebanon, but the District Court refused to do so. Right, but at this point, should we just wait two weeks to see what the decision is? I think the Court has two options. That's one of them. The other is to remand, given both what we brought to the Court's attention in terms of further proceedings in Lebanon, and what Iraq Telecom has attempted to bring to the Court's attention through a 28-J letter, and let the District Court re-weigh the Europcar factors. Our submission is the District Court abused its discretion in two important ways. One is it misapplied five of the six Europcar factors. That's an error of law. Number two, it misapprehended factually the sequence, a very important sequence of events in Lebanon, by attributing to IBL, my client, a desire to hinder or delay proceedings in Lebanon. Well, the District Court really made that finding based on what she perceived to be weak arguments in the Enoma proceeding, right? And that was error, Your Honor, and I guess my best authority for that is your own opinion in the interdigital case in the District Court, when Your Honor pointed out that under Europcar factor three, all that needs to be demonstrated is a possibility, and that is the word used in Europcar as well, a possibility of success in the set-aside proceeding. Instead, what the District Court did was it took that issue out of the hands of the Lebanese Court and said, I don't need to wait for the Lebanese Court. I've looked at these Lebanese law grounds. They don't impress me. So you're saying that the District Court doesn't have the authority to consider the strength of the arguments being made in the Fond Tribune? I think the District Court does have that authority, but let me draw a distinction that I think proves the point. As both Europcar and, Your Honor, interdigital in the District Court said, that standard is not likelihood of success, which is the standard the District Court applied. It is possibility, and here's the difference. No, no, no, but it's a different factor. One is the intent to delay. That can be inferred in a number of ways. It can be inferred from the timing or the sequence of certain events. It could also be inferred from the quality of arguments made, right? Well, I think, yes, Your Honor, and I think because what you're pointing out, and I'd like to explain how the five misapplied factors interrelate, it's a holistic assessment. What the District Court did was it teased out one factor, and it said, based on my evaluation of the merits, I don't think they're likely to prevail. I think there's an intent to hinder or delay. Here's why that is improper, if I may. Under Europcar, what this Court said was if the other side first went to the foreign jurisdiction to enforce, then any offense to international comity is laid at their doorstep. That is what Iraqtelecom did, and that is what the District Court misperceived, leading to the intent to hinder or delay finding, which is Iraqtelecom first went to a Lebanese court, and it said, please give us an executor, an enforcement order on the arbitration proceeding. That Lebanese proceeding, filed well before U.S. proceedings here, activated IBL's right to file a set-aside petition. IBL then filed its set-aside petition, and... I think that's understood, I guess, but it seemed that the District Court was inferring the intent to delay from the quality of the argument. But it can't do that, Your Honor. It cannot do that. It cannot do that without crossing a line, and here's my point. I don't think there's a hard and fast rule. Here's the point I would make. Judge Chin sat on the last panel here where we had an appeal from the District Court's attachment order, and what the Court did in that instance, it said, is we have to determine what is the likelihood of success in the second arbitration to evaluate the reasonableness of an attachment. That is a standard set by law, right, in the attachment statute, likelihood of success. The District Court imported that standard improperly into Europcar, which does not require a likelihood of success. I will be the first to concede that Europcar is a holistic assessment, but every factor other than the need for speed weighed in favor of IBL, and here's why. The factor according, and this is a non-exclusive list, but the factor according to Europcar is whether or not the foreign proceedings were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute. It seems to me that is a pretty broad statement that would allow courts to consider a number of things, not just the sequence of findings. It would indeed, Your Honor. What we're saying is that the District Court considered only the likelihood of success and misapprehended the sequence. The sequence is important because other than the language, admittedly broad, in Europcar's six factors, one of the things Europcar says expressly is that we're worried about two things. How do you say that the District Court only considered likelihood of success? The District Court goes through the different factors. Our submission, Your Honor, is that the District Court misapplied those factors, and let me explain why, if I may, which is- Well, but it's still considered, though. Incorrectly, according to you, but- Yes, Your Honor, and I would cite your own words in the first opinion in this case in applying an abuse of discretion standard, which is the court looks for three things in looking for an abuse of discretion, which we concede is the appropriate standard of review here. One, was there a misapplication of the legal standard? We say yes. Five out of six Europcar factors were misapplied. Was there an error of fact? Yes. We say the District Court misapprehended the sequence of proceedings and assumed that the set-aside proceeding was filed solely to hinder or delay U.S. enforcement proceedings. That's not correct. The express words, Judge Sullivan, of Europcar that matter here, in our view, is if the plaintiff, if the enforcing judgment holder party goes first to the foreign court, then that is a factor favoring a stay because they made the choice, not us, to invoke the foreign court first. And if you look at their brief at page 39, they say we didn't have to go to the Lebanese court first. One of the great inventions of the New York Convention is you no longer have to seek execution in the foreign court first. They chose to do so. They then set in motion exactly what we're dealing with in Lebanon. To this day, we are litigating in the Lebanese courts. Can I come back to something Judge Chin began with, which is that if there is, in fact, an opinion rendered by April 27th, I think you said, 23rd, 27th? The court's estimate is April 27th, according to what we submitted in the 28th. That's not going to end anything, right? I mean, if it goes against you, you have the right to appeal that in Lebanon? Would that be accurate? Both sides have the right to appeal, as pointed out by Rakhtalikon, but every decision under your car has focused on the outcome of the first instance decision in terms of the set-aside. So I would be hard-pressed to argue, just as I believe Rakhtalikon would be hard-pressed to argue, that, well, just because it didn't go my way at the first instance, we should stay further because of an appeal. That's not our argument. So if the opinion goes against you in Lebanon, then what would happen? You would withdraw this appeal? No, I think we would lose on any remand on an application to stay. What we're saying is the district court should have hit pause, and instead it jumped the gun. And here's what's so important, which is normally somebody argues prejudice, right? They say, I need to collect right away. Factor five, which is so important here, which was the subject of the last appeal in this case, has to do with the attachment of U.S. assets of IBL. From the get-go, from before the day the district court denied a stay, it had already attached more than sufficient assets of IBL to fully pay the judgment here. So there was no prejudice. But you didn't really make that argument to Judge Cote, did you? We made the argument to Judge Cote. And Judge Cote couldn't hermetically seal her brain between the attachment proceedings that she was conducting simultaneously with the enforcement proceedings that she was conducting. Judge Cote, throughout her opinion on this issue, repeatedly cites the evidence from the parallel attachment proceedings. Iraq Telecom, in their brief, repeatedly cites the evidence from the parallel attachment proceedings. It cannot be confined to one part of the record or another. Everything was going on simultaneously. Two things are important about Europe Car Factor 5, because I agree, Judge Sullivan, it's a holistic assessment. One is that from the get-go, from day one, Iraq Telecom was fully secured against any delay because there was an attachment at various times of 100 million of assets, 3 million of assets, and now today 17 million. You made this argument to Judge Cote? I thought you were focusing in front of Judge Cote about the issuance of a check, which under Lebanese law was not something that they had to cash or accept. Yeah, this is the parsing. But you offered to pay a debt under Lebanese law, right? That was one of many arguments that we made. We argued all six factors under Europe Car. No, I'm not asking about the factors. I'm asking about the facts. Did you argue the facts of the security that you're arguing on appeal? In the three pages of our motion to stay that we were filing simultaneously with the attachment proceedings, we did not expressly argue the attachment. We didn't need to in our submission because Judge Cote knew fully what was going on in the attachment proceedings. Indeed, Judge Sullivan, the finding to which you refer about likelihood of success comes from her evaluation of the attachment record, not from any separate record on the motion to stay or the motion to enforce. I don't believe it is possible when looking holistically at these factors. So you can't waive an argument, I guess is what you're saying. You didn't make the argument, but there were facts tucked in the record that she should have considered? You didn't make the argument? No, I don't believe that's our argument at all. What we're saying is if we assert Europe Car and six factors, all of which we addressed, that one cannot waive an argument under, for example, factor five about full security by saying interstitially within factor five, we didn't raise this point when it is, as you said, Judge Sullivan, a holistic assessment. But there's two things about factor five. One is they were already fully secured, no hardship. And as the district court acknowledged in its opinion, also under factor five, the award was suspended automatically in Lebanon upon the filing of the set-aside proceedings. And Europe Car holds expressly that when an award is suspended in the home country, it should not be enforced in the secondary jurisdiction, particularly when Iraq Telecom went there first. All right. I think we're way over, but you've reserved three minutes for rebuttal, unless either of my colleagues has questions. All right. Let's hear from Mr. Schafer now. Thank you, Judge Sullivan, and may it please the court. In appealing the district court's declination to stay confirmation of an arbitral award, IBL is challenging exercise of district court discretion, that is, that it's zenith, discretion that neither this court But it's zenith according to the D.C. Circuit, according to us two? I think so, Judge Sullivan. That's how I read Europe Car, the six factors, all of which are subject to weighing and all of which take account of all the characteristics. I think the D.C. Circuit may quibble about exactly how you formulate different factors, but I think the bottom line articulation of the discretion that's vested by the New York Convention, and that's the same discretion that this court was citing in Europe Car, I think it gets to the same place. And the bottom line is that neither this court nor the D.C. Circuit nor any other circuit court has ever found this discretion to grant or deny a stay of enforcement to have been abused. And I note, Judge Sullivan, the other point that you were making to my friend for the other side, that in mounting what I think is facially an improbable challenge, IBL is resorting to new arguments that are nowhere to be found within the scant pages it devoted to the issue when briefing its stay request below. And I encourage the court to do what you were doing, Judge Sullivan. Look at docket 117, pages 8 through 10. That is the entirety of IBL's argument for a stay. And my modest submission to this court is the district court could not have abused its discretion by failing to account for arguments that were never made under the Europe Car factors. If you compare the arguments that were actually made to Judge Code with her treatment of those, you'll find that she was very complete and on point in addressing everything that IBL had argued to her under each of the factors and all of the factors in explaining why a stay would be inappropriate on these specific facts. And to take what you were specifically asking Mr. Berger about, the argument on hardship was absolutely not made by IBL. If you look at page 10 of docket 117, all they argued is that they had made payments supposedly or offered payment in Lebanon, and Judge Code explained why that was effectively a ruse, that that offer of payment was of no value to Iraq Telecom. And because of that, Iraq Telecom declined the payment as was its right. And so it was inoperative. But I think that that was part of a complex of factors where Judge Code did not buy into what IBL was specifically selling to her. And the other references to other supposed securities were not made by Mr. Berger at that time. And they're illustrious, too, because everyone agrees that IBL is at grave risk of insolvency. If that happens in Lebanon, all of its assets are at risk. All of them could potentially be clawed back for the sake of many creditors, including customers. So the only monies that are truly secure from the perspective of Iraq Telecom, which is found to have been defrauded, are the monies that it has in hand, the monies that it's able to collect as Judge Code's orders would offer us it to do. And the only other security that Mr. Berger has identified is a bond. And, of course, that was posted in response to the judgment. It wasn't something that IBL had offered to do. And that bond would not be available to us if this Court were to do as Mr. Berger urges in reverse. And as to likelihood of success, which I agree with Judge Sullivan, is absolutely critical to the analysis, particularly as to the character of the foreign proceeding and whether it was for purposes of delay, it should be dispositive that IBL's annulment action in Lebanon, according to an uncontested record here, lacks merit. That's what Iraq Telecom established without refutation and the district court found. You can find the support for that at JA 37274. Well, can I ask you a different question, though? Please. Do you agree or would you concede that the judge was mistaken about the sequence of findings? No, Judge Sullivan. I think that is a phantom finding of fact that Judge Code never actually made. If you read her opinion, and the key portions of it are at SPA pages 8 through 10 and 19 through 20, all she did was point to the undisputed facts about the timeline. IBL waited to file its annulment action until the last day that it effectively could. It did that four months after the arbitral award issued that, according to IBL's contentions, was void ab initio. They knew it based upon the evidence that had been admitted over the course of the arbitration. That was two months after Iraq Telecom had filed for enforcement and obtained rights to enforcement in Lebanon until the annulment action was filed. And, again, it was without merit for the reasons that were established in 37274. That's the Mark Bowie declaration. You can see it in Judge Code's attachment order at JA 750 and 751. And then she found it again at SBA 19 and 20 on an undisputed record where there was no other side to it. IBL did not purport to establish to Judge Code that there was any merit in grounds that are being argued in Lebanon that, according to an expert attestation, are without merit. So what Mr. Berger says about that, he describes the filing of the enforcement action in Lebanon as having been activated by IBL's filing of its enforcement action. No, Your Honors, that is not true. If you look at SBA 52, the key Lebanese provision that IBL submitted into evidence, IBL could seek annulment at any time after the arbitral award issued. So they're saying this arbitral award was offensive to settled international law and could not possibly have been valid. But they didn't so submit to any Lebanese court on day one or day two or day 30 or day 45 or day 50. They waited until the end of the fourth month, essentially, to first start making those arguments, only when they had no other choice or they were going to lose their rights to counter in Lebanon. There's just no explanation for that on the record. And again, you have the undisputed evidence that this is a meritless annulment action that's part of bad faith conduct by a bank that's been found to have committed fraud. I guess we'll know whether it was meritless in a couple of weeks. Is there any advantage to waiting to see what comes out of Lebanon? Well, of course, I know better than to urge your honors as to when you're going to issue your decision. The question is, do you think it's going to make any difference to the analysis that this court has to make? I don't think it can, Judge Sullivan. I don't think it can. This is an appeal from a state decision that was rendered in April of last year on the record that existed before the district court in April of last year. Inherent in that is some prediction about what is going to happen in Lebanon and when may it happen. And it's IBL's acknowledged burden to show that it is grounds for a stay. They did not, consistent with Europcar's statement of the factors, they did not even purport to offer any estimate to Judge Cote as to when they thought they would get a ruling on annulment. So the fact that we're in this place where a Lebanese court has provided an ex parte attestation that suggests that a decision may issue in April 27th is not relevant to whether Judge Cote abused her discretion as she exercised it in April of last year. Of course, it's available to my friends to the other side to seek an indicative ruling under Federal Rule of Civil Procedure 62, Federal Rule of Appellate Procedure 12-1. They have not done that. I suppose if the ruling were to go their way, then they could go back to, and we were to have affirmed in the interim, they could go back to the district court and move under Rule 60, perhaps, to have the judgment altered. I think that's right, and just as Your Honor says, I think it would be a fundamentally different question for Judge Cote at that point than what is posed for this Court in the appeal. In this appeal, if you look at the statement of the issues presented on page 4 of IBL's brief, the only issue is whether Judge Cote abused her discretion by declining to stay, not as to whether she was correct to confirm the arbitral award and have it be enforceable. It's only a question of stay. So to take your question, Judge Sullivan, I know better than to tell my friends to the other side what they would do, but I think as Your Honor was positing, what they would be submitting to Judge Cote in the wake of an annulment decision in Lebanon, presumably, is that they would be seeking to alter the judgment of enforcement and of confirmation. That is different. That is different from what Your Honors are deciding about whether Judge Cote was within her rights, within her discretion, to deny a stay. And the only terms of the stay were until an annulment in action, until an annulment decision is handed down in Lebanon. So I think that there's no scenario, really no scenario, where this Court— Does the stay expire upon the issuance of the annulment decision? Well, there is no stay, Judge Chin. So it is an enforceable— Well, the issue would be moot, I guess is the point. The issue would be moot. I don't think it is because there's a bond that's tied to the judgment and there is post-judgment interest that is accruing on that. So I don't think that the issue of whether the stay was properly denied is moot. I just think that intervening developments cannot entitle my friends to the other side to the reversal they seek. If the decision was that the stay was improperly denied, then theoretically we could order the District Court to impose a stay now or to grant a stay now. I think so, Judge Chin, but I don't think that— That would be affected by the upcoming decision. It could, but I think it would be immaterial to Judge Coates' exercise of discretion on the record as it existed. And if Mr. Berger wants to change the record before the District Court and bring an appeal of a decision made on the basis of an expanded record, the procedure for that is well spelled out in the federal rules, and that has not been followed. What I don't think this Court could do, with all due respect, is to reverse Judge Coates based on a record that's made here in the first instance after the fact. I didn't mean to suggest that. I think what I was asking was the relief that was being sought in front of Judge Coates was a stay pending the annulment decision. That's the relief. And they want us to send it back and say Judge Coates should take another look at this because perhaps she misapplied the Europe card factors. But if the relief that is being sought is no longer available because the annulment decision has come down, then isn't this moot? I think it could—to take that specific question, Judge Sullivan, I think it might be moot, but the correct disposition would be to dismiss, not to vacate, but to dismiss the appeal at that point. It would be dismissed as moot. Dismiss it as moot. And that would effectively leave the judgment in place. It would leave the judgment in place, and arguments could be made to Judge Coates, as you say under Rule 60, presumably Rule 60b-5, as to what the import of the annulment decision in Lebanon should be by hypothesis. Now, I— Do you think it would be moot either way, whichever way the Court rules in Lebanon? True or false? The reason I don't think so is I believe that the post-judgment interest and the bond that are quite meaningful as a practical matter, they have monetary value attached to them. I think that that is best secured through an affirmance. Now, if there were a dismissal based upon mootness that did not disturb the denial of this day and the entry of judgment, then, you know, perhaps it comes down to what the import is for the bond. And our view is we would collect on the bond in that posture. All right. Thank you very much. Mr. Schaffer, we'll now hear from Mr. Berger for three minutes. Thank you, Your Honor. Let me go directly to why it matters in terms of waiting for two weeks, which is as when we were here last time in the first two appeals, both of which had to do with the attachment. The question is who gets to have IBL's money? Is it attached? Does it belong to IBL? Does it belong to Iraq Telecom? If you get the outcome that Mr. Schaffer is talking about, right, and there's an affirmance, then the judgment is enforceable. Then regardless of what the Lebanese court rules, they get $3.3 million of IBL's money. And I didn't hear Mr. Schaffer say, well, if we're back before Judge Cote, because things are moot here and we can re-argue, that they won't collect on the $3 million, the $3.3 million bond, and that they will return the money. But the relief, you're appealing the denial of a stay pending the decision from Lebanon, right? That's one of two parts. When you look at the closing prayer for relief in our brief, we asked for two things. Reverse the judgment. It is the judgment that has the bite that they can collect if this court says that affirms Judge Cote's decision because there's an act of judgment. It is the moment stayed only by a supersedious bond. But why is that the relief you'd be entitled to? It seems to me you're saying that she misapplied the Europcar factors, and so therefore she improperly denied a stay. And entered a final judgment, which is why we're here from the final judgment. Well, the final judgment that is stayed, right? No, the final judgment is not stayed. It is stayed purely by virtue of the fact that we posted a supersedious bond, whose effect disappears upon the issuance of this court's mandate. What Iraq Telecom wants to do, regardless of what we're arguing before Judge Cote, should we be there on remand, is we now have your $3.3 million. It cannot be that there's a circumstance where the Lebanese court hasn't yet ruled, yet Iraq Telecom gets to enforce the judgment either against the bond or directly against IBL's assets. I'm looking at the conclusion of your brief, and it simply addresses the request for a stay. It says we request that the court reverse and remand. So reverse the court's order denying the request to stay in enforcement, remand with instructions to stay for the proceedings. Reversal has to be from a judgment. We don't appeal orders, as I read repeatedly from this court. One appeals judgment. It's a reversal of the court's order denying a request for a stay. From our perspective, that is reversing the entry of judgment. What would have to happen in this circumstance, because a stay wasn't denied, is that if there is to be any active litigation before Judge Cote, it has to be with the status quo frozen. The only thing that freezes the status quo at the moment is our supersedious bond. If Iraq Telecom collects $3.3 million, the amount of the judgment, then it becomes a very different matter on remand before Judge Cote, because I haven't heard Iraq Telecom say on the record, oh, either we will not collect against the bond if it goes back to Judge Cote, or we'll return those funds. The only error you're saying that she made is not granting the request for a stay. You're not challenging the judgment on the matter. The consequence of her failure, respectfully, to enter stay is the entry of a judgment, and that's why it matters, because without a stay, judgment was entered, and this is precisely the circumstance that we were arguing about in the attachment, which is who gets to take and hold IBL's money in the United States. And right now, if there is an affirmance, and nothing further with respect to enforcement of the judgment that Judge Cote entered, then Iraq Telecom is going to enforce that judgment either against the bond or against IBL's attached assets in the United States, and there has to be a way of preserving the status quo. That was the purpose of the Europe card factors, pending the outcome of proceedings. You didn't make this argument in your brief, right? We have made this argument. You made the argument you just made now in your brief? We have made the argument that they are fully secured and that, therefore, we should be able to address this. They get the final judgment of the court. Under Factor VI, we made the argument that it is inefficient. One of the factors the court is to consider is that the remedy to which Iraq Telecom wants to relegate us is a 60-B motion to undo the judgment. That is what falls within Factor VI. Their argument is, okay, well, it turns out that the Lebanese court rules in your favor. Then you can file a 60-B motion in front of Judge Cote, which isn't going to do us a lot of good if they've already enforced the judgment and collected the money. Okay, well, we will reserve the sit-in. Thank you, both, for the arguments. That concludes our argument calendar. We have another case on submission and some motions, but we'll reserve on those as well. So let me ask the clerk to adjourn the court.